**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

A. M., a minor, by and through
his parents David Marshall and
Karla Marshall; DAVID MARSHALL,
on his own behalf; KARLA
MARSHALL, on her own behalf,
              *Plaintiffs-Appellants,*

              v.

MONROVIA UNIFIED SCHOOL
DISTRICT; WEST SAN GABRIEL
SPECIAL EDUCATION LOCAL
PLANNING AREA, Erroneously Sued
As West San Gabriel Valley
Special Education Local Plan
Area,
              *Defendants-Appellees.*

No. 09-55169

D.C. No.
2:07-cv-00243-
RSWL-JTL

20093

A. M., a minor, by and through
his parents David Marshall and
Karla Marshall; DAVID MARSHALL,
on his own behalf; KARLA
MARSHALL, on her own behalf,
              *Plaintiffs-Appellants,*

              v.

MONROVIA UNIFIED SCHOOL
DISTRICT; WEST SAN GABRIEL
SPECIAL EDUCATION LOCAL
PLANNING AREA, Erroneously Sued
As West San Gabriel Valley
Special Education Local Plan
Area,
              *Defendants-Appellees.*

No. 09-55478

D.C. No.
2:07-cv-00243-
RSWL-JTL

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted
June 11, 2010—Pasadena, California

Filed December 15, 2010

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Mark W. Bennett, District Judge.*

Opinion by Judge Goodwin;
Partial Concurrence and Partial Dissent by Judge Bennett

*The Honorable Mark W. Bennett, United States District Judge for the
Northern District of Iowa, sitting by designation.

**COUNSEL**

N. Jane DuBovy and Mandy L. Favaloro, A2Z Educational Advocates, Pacific Palisades, California, for the plaintiffs-appellants.

Jonathan J. Mott, Parker & Covert, Tustin, California, for the defendants-appellees.

Keith L. Wurster, Baker & McKenzie, Palo Alto, California, for amicus Council of Parent Attorneys and Advocates.

---

**OPINION**

GOODWIN, Circuit Judge:

A.M. and his parents (collectively, "Plaintiffs") appeal a summary judgment for Monrovia Unified School District and West San Gabriel Special Education Local Planning Area (collectively, "Defendant") on Plaintiffs' action for violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, and violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs also appeal an award of attorneys' fees to Defendant under the IDEA. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

A.M. was a young boy, approximately eleven years old at all relevant times, with cerebral palsy, seizure disorder, and global developmental delays. He was non-ambulatory and required assistance changing body positions. He had cortical blindness, meaning his eyes could see but his brain did not acknowledge what his eyes saw. Thus, A.M. did not always understand, retain, or make associations with what he saw. He

could communicate only by responding to yes-or-no questions —a smile, a sound, or lifting his hand was a "yes"; a flat affect was a "no." However, A.M. was not consistent with these responses, so his service providers had difficulty determining whether a "yes" signal was actually an involuntary movement caused by the cerebral palsy.

In December 2002, A.M. enrolled in the California Virtual Academy ("CAVA"), a network of charter schools offering independent study at its students' homes. Although Plaintiffs live in Los Angeles County, A.M. enrolled in CAVA Kern County, which services students in any county that abuts Kern County. CAVA provided materials to A.M.'s father, who instructed A.M. and reported the results on CAVA's website. A general education teacher visited Plaintiffs' home three days per week for one and one-half hours per session. The teacher modified the curriculum by converting materials to yes-or-no questions and enlarging materials.

CAVA created a valid individualized educational program ("IEP") for A.M. in 2002. CAVA and Plaintiffs agreed on an independent study/home schooling placement with support from a resource specialist five times a week for one-hour sessions, occupational therapy once a week for a one-hour session, adapted physical education once a week for a one-hour session, and speech and language once a week for a one-hour session. CAVA and Plaintiffs held IEP meetings again in 2003 and 2004, but they were unable to agree on goals and objectives and A.M.'s parents refused to sign the IEP documents. A.M.'s placement continued as independent study/ home schooling.

On December 9, 2005, CAVA and Plaintiffs agreed on a new IEP that changed A.M.'s placement to a third-grade general-education classroom with appropriate supports. The IEP team found that A.M. had "marked improvement academically, socially, and physically," though his academic improvement was due to his service providers' increased abil-

ity over time to gauge A.M.'s yes/no response. His social improvement was based on observations of his interactions and communication through his smiles with other people, which indicated awareness of his surroundings. His physical improvement was based on observations that he could sit in his chair and focus. The IEP described A.M.'s language proficiency as "age appropriate," which means that if a person spoke to A.M. like any other nine or ten-year-old, A.M. would have understood it completely, though he was non-verbal. The IEP was not based on any formal assessment of A.M.'s academic or cognitive abilities.

A.M. enrolled in Defendant school district because CAVA has no general-education classrooms and therefore could not implement the 2005 IEP. Plaintiffs submitted proof of residence and a copy of the 2005 IEP to Defendant on December 12, 2005. Gail Crotty reviewed A.M.'s IEP to determine his interim placement. Crotty has a master's degree in educational administration, credentials in adaptive physical education and learning handicaps, and certificates in resource special programs and crosscultural language and academic development. She has held numerous special-education-related positions and has worked with at least twenty students with disabilities comparable to A.M.'s.

Crotty was concerned that Defendant was being asked to implement an IEP that was never previously implemented and required a change in placement. She also was concerned that the placement was determined at the beginning of the IEP meeting, rather than after A.M.'s present levels of performance were discussed, and that the present levels of performance in the IEP document were unclear and referred to reports that were not attached. Some goals were not measurable, and other goals were on different levels. For example, one goal was to give a big smile when prompted by "give a big smile now," while another goal was to write a three paragraph report using the third grade curriculum. Crotty was concerned about whether A.M. could succeed if he went straight

from home schooling to a general education classroom, since he was not used to being around other students.

Crotty scheduled an intake meeting for December 20, 2005, which was two days before the winter vacation. Plaintiffs and Defendant disagreed about an appropriate placement— Plaintiffs wanted a general-education classroom as provided in the 2005 IEP, whereas Defendant wanted to continue independent study/home schooling for a thirty-day period to assess A.M. Though Plaintiffs did not agree to Defendant's offer, A.M. continued in the independent study/home schooling placement with services beginning on January 9, 2006, which was the first day of the new semester.

Defendant scheduled an IEP meeting on February 9, 2006. Plaintiffs agreed to the February 9, 2006 meeting date, but cancelled three days before the meeting because A.M.'s father could not arrange child care for A.M. Plaintiffs requested an IEP meeting date in mid-March or April, but Defendant could not agree because of the thirty-day requirement. Defendant offered to allow A.M.'s mother or father to participate by telephone, or to allow Plaintiff's father to bring A.M. to the meeting as he had done in the past, but Plaintiffs refused these suggestions. Defendant held the meeting without Plaintiffs.

Defendant's IEP team determined that A.M. should be classified as a fourth-grader and placed in a special day class on a general-education campus. Because Defendant does not have an appropriate special day class, the IEP team recommended a referral to the Los Angeles County Office of Education for placement. Defendant offered an IEP consisting of a comprehensive assessment of A.M., physical therapy for two hours per week, occupational therapy for one-half hour per week, speech and language for one and one-half hours per week, adaptive physical education twice a week in half-hour sessions, placement in a special day class with a teacher credentialed in moderate-to-severe special education, a referral to California Children's Services, a referral to Los Angeles

County Office of Education for placement in a special day class, and a one-to-one aide at the school site. This offer was sent to Plaintiffs, but they did not consent to it.

Defendant held a second IEP meeting on May 1, 2006. Plaintiffs' lawyer attended, though Plaintiffs did not attend. A Los Angeles County Office of Education representative attended, and the IEP team agreed to offer Plaintiffs a placement in a special day class at Encinitas School.

Plaintiffs and Defendant each requested a due-process hearing with the Office of Administrative Hearings ("OAH"). OAH consolidated the requests and ruled for Defendant. Plaintiffs filed a complaint in district court alleging a violation of the IDEA and a violation of Section 504. A.M. died while the action was pending. Defendants moved for summary judgment on both claims, and the district court granted the motion. The district court also awarded attorneys' fees to Defendant on the ground that A.M.'s death mooted the case and Plaintiffs should not have continued it after it became moot.

## II.   DISCUSSION

Plaintiffs argue that the district court erred by (A) failing to reverse the OAH ruling for Defendant on Plaintiffs' IDEA claim, (B) granting summary judgment to Defendant on Plaintiffs' Section 504 claim, and (C) awarding attorneys' fees to Defendant.

>   A.   *Whether the District Court Erred by Failing to Reverse the OAH Ruling for Defendant on Plaintiff's IDEA claim*

We give "due weight" to OAH decisions. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). We give more deference to OAH decisions if the findings are thorough and careful. *See Capistrano Unified Sch. Dist. v. Wartenberg by & Through*

*Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995). However, the ultimate determination of whether an IEP was appropriate is reviewed *de novo*. *Id.*

Plaintiffs argue that Defendant denied A.M. a free appropriate public education ("FAPE") by not developing a procedurally and substantively valid IEP. *See* 20 U.S.C. § 1414(a)(5); *Rowley*, 458 U.S. at 188 (stating that a FAPE includes an IEP).

### 1.  Procedure

Plaintiffs argue that Defendant denied A.M. a procedurally valid IEP by (a) failing to implement the 2005 IEP or develop and implement a new valid IEP within thirty days of A.M. transferring into the district; (b) failing to develop an adequate IEP; and (c) not allowing Plaintiffs to meaningfully participate in the IEP process.

#### a.  Whether Defendant failed to implement the 2005 IEP or develop and implement a new valid IEP within thirty days of A.M. transferring into the district

**[1]** When an exceptional-needs student transfers from one California school district to another during the school year, the local school district shall provide "services comparable to those described in the previously approved [IEP] . . . for a period not to exceed 30 days, by which time the local educational agency shall adopt the previously approved [IEP] or shall develop, adopt, and implement a new [IEP]." Cal. Educ. Code § 56325(a)(1).

Plaintiffs argue that Section 56325(a)(1) required Defendant to provide services comparable to the 2005 IEP during the initial thirty days because the 2005 IEP was the "previously approved IEP" since Plaintiffs and CAVA agreed to it,

though it was never implemented.[1] Defendant argues that it was required only to provide services in accordance with the last implemented IEP because California's Section 56325(a)(1) is modeled after the IDEA, which states that when an exceptional needs student who "had an IEP that was in effect in the same State" transfers to a new school, the school shall provide services comparable to the "previously held IEP." 20 U.S.C. § 1414(d)(2)(C)(i)(I). Defendant argues that only the independent study/home schooling IEP was ever "in effect."

**[2]** OAH concluded that Section 56325(a)(1) refers to the last IEP that was actually implemented. OAH's reasoning is persuasive: providing services in accordance with the previously implemented IEP effectuates the statute's purpose of minimizing disruption to the student while the parents and the receiving school resolve disagreements about proper placement. We agree with OAH.

Plaintiffs also argue that Defendant violated Section 56325(a)(1) by not developing a new valid IEP within thirty days. A.M.'s father filled out the paperwork to enroll A.M. in Defendant District on December 12, 2005; Defendant held an intake meeting with Plaintiffs on December 20, 2005; school closed for the winter break from December 22, 2005 to January 9, 2006; Defendant began providing services to A.M. on January 9, 2006; and Defendant held an IEP meeting on February 9, 2006. Thus, Defendant did not hold an IEP within thirty days of A.M.'s enrollment.

OAH concluded, and the district court affirmed, that Defen-

---

[1]Plaintiffs claim that Defendant followed an outdated 2002 IEP in placing A.M. in independent study/home schooling. This argument is specious and takes advantage of the fact that Plaintiffs refused to sign any IEP documents after 2002. Plaintiffs accepted the independent study/home schooling placement until December 2005, and it is the only placement A.M. ever had through CAVA.

dant's actions were appropriate because Defendant would have had insufficient time to evaluate A.M. if Defendant were required to hold an IEP meeting within thirty days of A.M.'s enrollment on December 20, 2005.[2] However, neither OAH nor the district court cited authority for the proposition that school holidays toll Section 56325(a)(1)'s thirty-day requirement.

[3] Whether or not Defendant exceeded the thirty-day limit, A.M. suffered no deprivation of educational benefit and therefore has no claim. *See Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001). OAH is correct that A.M.'s service providers could not have adequately assessed A.M.'s needs within thirty days of December 12 or 20, 2005. Indeed, even though Defendant had thirty days to evaluate A.M., Plaintiffs and Defendant were unable to agree upon an appropriate IEP and had to schedule a further meeting in May. That the brief delay during winter vacation caused no educational deprivation to A.M. is further evidenced by the fact that A.M.'s placement continued as independent study/home schooling in May.

[4] Therefore, Defendant did not commit a procedural violation by failing to implement the 2005 IEP or by failing to develop and implement a new valid IEP within thirty days of A.M. transferring into the district.

### b. Whether Defendant failed to hold an adequate IEP meeting on December 20, 2005

[5] Plaintiffs argue that the December 20, 2005 intake meeting should be construed as an IEP meeting because the resulting intake document substantially differed from the 2005 IEP, essentially changing it. On this basis, plaintiffs contend that the meeting was procedurally deficient since all per-

---

[2]OAH did not explain why it considered A.M. enrolled as of December 20, 2005 rather than December 12, 2005.

sonnel necessary for an IEP evaluation were not present. As OAH correctly noted, however, "[Defendant] did not commit procedural violations when it did not have a full IEP team at the December 20, 2005 intake meeting. The December 20, 2005 meeting was not an IEP meeting."

> c.  *Whether Defendant allowed Plaintiffs to meaningfully participate in the IEP process*

**[6]** A receiving school must take steps to ensure that one or both parents of a disabled child are present at the IEP meeting by "(1) Notifying parents of the meeting early enough to ensure that they will have an opportunity to attend; and (2) Scheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322(a). "If neither parent can attend an IEP Team meeting, the public agency must use other methods to ensure parent participation, including individual or conference telephone calls . . . ." *Id.* at § 300.322(c). "A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend. In this case, the public agency must keep a record of its attempts to arrange a mutually agreed on time and place . . . ." *Id.* at § 300.322(d).

**[7]** Plaintiffs argue that the district court erred by not making findings on whether Defendant allowed them to participate in A.M.'s IEP meetings. The district court indicated, through its finding that Defendant did not commit a procedural violation, that Defendant took steps to obtain Plaintiffs' presence at the IEP meetings. Moreover, OAH carefully considered the issue and concluded that Defendant took steps to ensure Plaintiffs' participation, and there is no reason to overturn that reasoned decision. Defendant scheduled an IEP meeting for a date agreeable to Plaintiffs, and Plaintiffs cancelled three days before the meeting. Defendant offered to reschedule, but Plaintiffs would only agree to a meeting in mid-March or April, which was too far beyond the thirty-day limit. Defendant offered to allow Plaintiffs to participate by

telephone, but Plaintiffs refused. Thus, Defendant took steps to obtain Plaintiffs' presence at the IEP meeting.

Plaintiffs also argue that A.M.'s parents could not meaningfully participate in the IEP process because the IEP documents failed to include pertinent information. OAH rejected these arguments after careful consideration. OAH found that the IEP documents did not specify a method for measuring A.M.'s progress in physical therapy, but this did not affect Plaintiffs' ability to assess the IEP offer because the physical therapy goals were similar to those in the CAVA IEP that Plaintiffs accepted. OAH rejected Plaintiffs' argument that the IEP documents failed to specify the supports and modifications necessary for A.M. to participate in the general-education setting because the IEP specified that A.M. would have the support of a one-to-one aide during school hours. OAH also found that the IEP sufficiently documented the rationale for placing A.M. in a special-education classroom and identified the duration and location of the special day classes and speech and language services.

**[8]** Therefore, the district court properly affirmed OAH's carefully considered decision that Defendant did not commit a procedural violation.

### 2.   *Substance*

Plaintiffs argue that A.M.'s IEP was substantively deficient because it was not based on A.M.'s unique needs and was not reasonably calculated to provide A.M. an educational benefit. *See Rowley*, 458 U.S. at 207, 215. Plaintiffs also argue that Defendant did not offer A.M. an educational program that comported with his IEP, and did not offer A.M. a program in the least restrictive environment. *See id.* at 203; *Poolaw v. Bishop*, 67 F.3d 830, 834 (9th Cir. 1995).

**[9]** The IEP team considered A.M.'s unique needs and developed an IEP calculated to provide him an educational

benefit. The IEP team considered A.M.'s levels of performance and his needs based on the observations of A.M.'s service providers during the thirty-day period. They concluded a fourth-grade placement was appropriate. Defendant created an IEP that included individual services and placement in a special day class. Thus, the IEP was based on A.M.'s needs and was calculated to provide him a benefit.

Plaintiffs argue that Defendant did not offer A.M. an educational program that comported with his IEP. However, Plaintiffs claim only that the educational program did not comport with the 2005 CAVA IEP; Plaintiffs do not claim that Defendant did not offer a program that comported with the IEP created by Defendant in 2006. Thus, this argument fails.

Defendant offered A.M. an education in the least restrictive environment appropriate. As OAH correctly noted, Defendant's argument that A.M. could not have received a meaningful education in a full-inclusion general-education setting is persuasive. A.M. was non-verbal and could respond only to yes-or-no questions. The general education teacher assigned to A.M. through CAVA testified that a general-education classroom would have overwhelmed A.M. A.M.'s service providers testified that their attempts to have A.M. interact with other children were fruitless.

[10] The evidence, however, indicated that A.M. would have benefitted from the special-education classroom placement offered by Defendant. Witnesses testified that the offered setting had the equipment and staffing appropriate for A.M. The program also offered A.M. opportunities for mainstreaming at lunch and recess, and the opportunity for mainstream classes if A.M. performed above the special-education curriculum.

[11] Therefore, Defendant placed A.M. in the least restrictive environment appropriate.

*B.    Whether the District Court Erred by Granting Summary Judgment to Defendant on Plaintiffs' Section 504 claim*

**[12]** Section 504 prohibits discrimination against disabled persons by any program receiving federal financial assistance. 29 U.S.C. § 794; see also *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008). Plaintiffs argue that Defendant discriminated against A.M. by failing to implement the 2005 IEP and by not placing A.M. in a general education classroom. Plaintiffs argue that summary judgment must be reversed because Defendant's motion for summary judgment did not address Plaintiffs' claim of intentional discrimination and because the district court did not analyze Plaintiffs' allegations regarding the Section 504 claim.

**[13]** As discussed above, Defendant did not commit procedural or substantive error with respect to A.M.'s placement, and Defendant therefore did not discriminate against A.M. Moreover, a school may establish compliance with Section 504 by implementing a valid IEP. 34 C.F.R. § 104.33(b)(2). Accordingly, Plaintiffs have no viable Section 504 claim against Defendant.

*C.    Whether the District Court Erred by Awarding Attorneys' Fees to Defendant under the IDEA on the Basis that the Action Became Moot upon A.M.'s Death*

**[14]** Attorneys' fees may be awarded under the IDEA to "a State educational agency or local educational agency against . . . the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation . . . ." 20 U.S.C. § 1415(i)(3)(B)(i)(II). The district court concluded that the case became moot upon A.M.'s death and should not have been continued after February 13, 2008. Therefore, the district court awarded Defendant attorneys' fees incurred after that date, totaling $49,245, to be paid by Plaintiffs' counsel.

**[15]** Plaintiffs sought reimbursement for expenses caused by caring for A.M. at home during the times when they alleged that A.M. should have been in a school classroom and also damages for emotional distress. Neither the IDEA claim nor the Section 504 claim was mooted by A.M.'s death because the parents sought reimbursement and damages. *See Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 5 n.3 (1993); *Mark H.*, 513 F.3d at 935.

Defendant argues that the attorneys' fees award is proper because Plaintiffs' Section 504 claim is frivolous in light of Ninth Circuit law holding that a valid IEP is sufficient to satisfy Section 504. This argument fails because the validity of the challenged IEP had not been established prior to this lawsuit.

Defendant also argues that the district court properly awarded attorneys' fees because Plaintiffs could not seek reimbursement and damages because they waived those issues by not raising them to OAH. However, the district court did not address waiver in its order, but instead relied only on mootness.

**[16]** Accordingly, we remand this issue to the district court to determine whether attorneys' fees should be granted because Plaintiffs waived reimbursement and damages, and therefore had no claim that survived A.M.

## III.   CONCLUSION

The district court order granting summary judgment to Defendant on Plaintiffs' IDEA and Section 504 claims is AFFIRMED. The order awarding attorney's fees is REMANDED to the district court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party shall be responsible for its own costs on appeal.

BENNETT, District Judge, concurring in part and dissenting in part:

Although I find that the majority's decision is generally well reasoned, and I ultimately concur, albeit reluctantly, in the disposition of the Plaintiffs' IDEA and Section 504 claims, I write separately to address my concern that the construction of the "transfer" statutes, California Education Code § 56325(a)(1) and 20 U.S.C. § 1414(d)(2)(C)(i), relied upon by the majority to determine which IEP the receiving district was required to implement, is contrary to both plain meaning and the purposes of these statutes. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc) ("[T]he structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions.").

The majority agrees with the OAH's conclusion that California Education Code § 56325(a)(1), which refers to a "previously approved" IEP, refers to "the last IEP that was actually implemented." The majority finds persuasive the OAH's reasoning that providing services in accordance with the previously implemented IEP effectuates the statute's purpose of minimizing disruption to the student while the parents and the receiving district resolve disagreements about proper placement.

In contrast, I find that construing a "previously approved" IEP to mean "the last IEP that was actually implemented" is not consistent with the plain meaning of either Section 56325(a)(1) or Section 1414(d)(2)(C)(i), the IDEA provision that Section 56325(a)(1) is intended to satisfy. *See* Cal. Educ. Code § 56325(a)(1) ("As required by subclause (I) of clause (i) of subparagraph (C) of paragraph (2) of subsection (d) of Section 1414 of Title 20 of the United States Code, the fol-

lowing shall apply. . . .”). Section 56325(a)(1) refers to “an individual with exceptional needs who has an [IEP]” and to “the previously approved [IEP],” while Section 1414(d)(2)(C)(i) refers to a child with a disability “who had an IEP that was in effect” and to “the previously held IEP.” None of this language requires an interpretation of these references to mean “the last IEP actually implemented.”

To the contrary, the plain meaning of “the previously approved [IEP]” is exactly that, the IEP last approved by the IEP team, and an individual “had” such an IEP from the time it was approved, whether or not that IEP was ever implemented by the transferring district. Similarly, the plain meaning of an IEP that was “in effect” or “held” is an IEP that had been approved by the IEP team, even if it had not been actually implemented by the transferring district. Reading the statutory language in question to mean “the IEP last approved by the IEP team” properly distinguishes between an IEP that has been either superseded or only proposed, and thus is not appropriate for implementation by the receiving district, and one that should have current force and effect and, thus, should be implemented by the receiving district.

Moreover, to construe “previously approved IEP,” “the IEP in effect,” or the IEP “held” to mean “the IEP actually implemented” would effectively preclude an IEP team from ever approving an IEP that required services that the student’s current district could not provide and that, consequently, required transfer of the student to a new district, because that IEP would never have to be recognized or implemented by the receiving district. Such an effect is plainly contrary to the purpose of the IDEA, which is to provide all individuals with a free appropriate public education (FAPE). *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1087 (9th Cir. 2008) (“We emphasize in particular that the express purpose of the IDEA is “to ensure that *all* children with disabilities have available to them a free appropriate public education.” (quoting 20 U.S.C. § 1400(d)(1)(A), with emphasis added)). Even assum-

ing that a purpose of the "transfer" statutes is to minimize disruption to the student while the parents and the receiving district resolve disagreements about proper placement, as the majority states, making the transferring district's last approved IEP a nullity, if it has not actually been "implemented," does not serve the purpose of avoiding disruption to the student. Also, the "transfer" statutes already provide the receiving district with a period (thirty days under the California statute) to evaluate the transferring district's last approved IEP and to develop, adopt, and implement a new IEP, if the receiving district deems that course to be appropriate. Thus, the purposes of providing transferring individuals with a FAPE and allowing the receiving district the opportunity to reevaluate the last approved IEP from the transferring district are satisfied by applying the plain meaning of the terms in question.

The receiving district's failure to implement A.M.'s last approved IEP, the December 2005 IEP, upon A.M.'s transfer, as it was required to do under my construction of the "transfer" statutes, however, does not necessarily undermine the validity of the 2006 IEP ultimately developed by the receiving district. Were I writing on a clean slate, I would likely find that the 2006 IEP was invalid. Nevertheless, in light of the deference due the agency's determination that the 2006 IEP was valid, I must, reluctantly, concur in the majority's conclusion that the Plaintiffs were allowed meaningful participation in the development of the 2006 IEP and that the 2006 IEP was not substantively deficient. Thus, I also, reluctantly, concur in the majority's conclusion that the district court properly granted summary judgment on the Plaintiffs' IDEA and Section 504 claims.

I also concur in the majority's conclusion that neither the IDEA claim nor the Section 504 claim was mooted by A.M.'s death, because the parents sought reimbursement and damages, so that the district court's award of attorney fees on the ground that the parents' separate claims were mooted was

improper. In reaching this conclusion, I am particularly persuaded by the reasoning presented in the brief of *amicus curiae* Council of Parent Attorney Advocates, Inc.

However, I dissent from the majority's conclusion that the issue of attorney fees should be remanded to the district court to determine whether attorney fees should be granted because the Plaintiffs waived reimbursement and damages and, therefore, had no claim that survived A.M. I would hold that the Plaintiffs did not waive their reimbursement and damages claims as a matter of law, because the Plaintiffs sought reimbursement for privately provided services in both the administrative and the judicial review proceedings. Thus, I would simply reverse the district court's award of attorney fees.

Therefore, while I concur in affirming the denial of the Plaintiffs' IDEA and Section 504 claims and reversing the district court's award of attorney fees to the Defendants, I respectfully dissent from remanding the issue of attorney fees to the district court for the determination of whether or not the Plaintiffs waived reimbursement and damages.