**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOUG C., individually and on behalf of his minor child; SPENCER C., a minor child, *Plaintiffs-Appellants*, v. STATE OF HAWAII DEPARTMENT OF EDUCATION; KATHRYN MATAYOSHI, in her official capacity as Acting Superintendent of Hawaii Public Schools, *Defendants-Appellees*. | No. 12-15079 D.C. No. 1:11-cv-00441-KSC OPINION |

Appeal from the United States District Court
for the District of Hawaii
Kevin S. Chang, Magistrate Judge, Presiding

Argued and Submitted
October 16, 2012—Honolulu, Hawaii

Filed June 13, 2013

Before: Stephen Reinhardt, Sidney R. Thomas,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

# SUMMARY[*]

## Individuals with Disabilities Education Act

Reversing the district court's judgment, the panel held that the Hawaii Department of Education violated the Individuals with Disabilities Education Act by holding a student's annual individualized education program meeting without the participation of a parent.

The panel held that the Department of Education denied the student a free appropriate public education by holding the IEP meeting without the parent even though the parent did not affirmatively refuse to attend, but rather actively sought to reschedule the meeting in order to participate. The panel remanded the case for the district court for further proceedings regarding the parent's entitlement to reimbursement of private school tuition.

# COUNSEL

Keith H.S. Peck (argued), Honolulu, Hawaii; and Robert E. Badger, Badger Arakaki, LLC, Honolulu, Hawaii, for Plaintiffs-Appellants.

David M. Louie, Attorney General, and Michelle M.L. Puu (argued) and Holly T. Shikada, Deputy Attorneys General, Honolulu, Hawaii for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

PAEZ, Circuit Judge:

Plaintiff Doug C., individually and on behalf of his son, Spencer C., appeals the district court's judgment finding that the defendant, the Hawaii Department of Education, did not deny Spencer a free appropriate public education ("FAPE"), and thus did not violate the Individuals with Disabilities Education Act ("IDEA"), by holding an annual individualized education program ("IEP") meeting without the participation of a parent. Parental participation in the IEP and educational placement process is central to the IDEA's goal of protecting disabled students' rights and providing each disabled student with a FAPE. 20 U.S.C. § 1400(d); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205–06 (1982). We conclude that the Department violated the IDEA's explicit parental participation requirements. The Department held Spencer's annual IEP meeting without parental participation even though Doug C. did not "affirmatively refuse[] to attend," but rather actively sought to reschedule the meeting in order to participate. *Shapiro v. Paradise Valley Unified Sch. Dist.*, 317 F.3d 1072, 1078 (9th Cir. 2003), *superseded on other grounds by* 20 U.S.C. § 1414(d)(1)(B). By denying Doug C. the opportunity to participate in the IEP process, the Department denied Spencer a FAPE. *See id.* at 1079. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

The IEP meeting in question changed Spencer's placement from Horizons Academy, a private special education facility, to the Workplace Readiness Program at Maui High School. Pending the outcome of these administrative and judicial review proceedings, Doug C. continued Spencer's placement at Horizons Academy at his

own expense.  We remand to the district court for further proceedings regarding Doug C.'s entitlement to reimbursement of Spencer's private school tuition.  Because we conclude that the Department denied Spencer a FAPE, Doug C. is entitled to reimbursement if he can establish that "the private school placement was proper under the Act." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

## I.

Spencer is an 18-year-old student in the Maui District of the Hawaii Department of Education.[1]  He was diagnosed with autism at age two.  As a result of his condition, the Department determined that Spencer is eligible to receive special education and other related services, and his educational rights are protected by the IDEA.  Beginning in fifth grade, Spencer's IEP placed him at a private special education facility, Horizons Academy, at the expense of the Department of Education.  The Department held Spencer's annual IEP meeting on November 9, 2010 despite Doug C.'s inability to attend the meeting that day.  At that meeting, the Department changed Spencer's educational placement, moving him to a program at Maui High School, his local public school.

The central issue in this case is whether the Department's efforts to include Doug C. in the November IEP meeting are sufficient to meet the requirements of the IDEA.  A close review of the events leading up to the IEP meeting is

---

[1] Spencer was 15-years-old when the IEP meeting that is the subject of this appeal took place.

therefore critical.[2]  The IEP team and Doug C. first discussed the annual IEP meeting date during a student support meeting in September 2010.[3]   Kaleo Waiau, a special education coordinator at Maui High School, testified that Doug C. and members of the education team all agreed that the IEP meeting would be held on October 28.  Doug C. testified that he thought that they had only agreed, tentatively, to meet sometime in late October.  In any event, Waiau called Doug C. on October 22 to confirm the October 28 meeting.  Doug C. stated that he was unavailable that day, and they settled instead on either November 4 or 5 (the testimony on which is inconsistent).  Doug C. testified that the November date was also tentative, subject to checking his calendar and confirming.  The following day, Doug C. called Waiau to let him know that he was not available on that day, and they settled firmly on November 9 instead.

On the morning of November 9, Doug C. e-mailed Waiau at 7:27 a.m.  He explained that he was sick and therefore unable to attend the IEP meeting.  He suggested rescheduling the meeting for the following week, on either November 16 or 17.  The annual review deadline for Spencer's IEP was Saturday, November 13.  According to Waiau, some of the members of the IEP team were not available on Friday, November 12.  Therefore, Waiau offered to reschedule for either Wednesday, November 10, or Thursday, November 11, accommodating the other members' schedules while still

---

[2] The facts, drawn from the testimony and other evidence presented at a due process administrative hearing before a state hearing officer, are mostly undisputed.

[3] Spencer's mother apparently found the IEP meetings too stressful to attend.

holding the meeting before the deadline. Doug C. responded that he could possibly participate on either of those days, but could not definitively commit to either day since he was ill and could not guarantee that he would recover in time. Waiau also suggested that Doug C. participate by phone or the Internet. But Doug C. explained that (1) he wanted to be physically present at his son's IEP meeting and (2) he did not feel physically well enough to participate meaningfully through any means that day.

Waiau decided to go forward with the meeting on November 9 as scheduled. He testified that he had already asked "13 people on three separate occasions to change their schedules and cancel other commitments" to schedule the meeting. Therefore, without a firm commitment from Doug C. for one of the two dates he proposed, Waiau refused to reschedule the meeting. Waiau and the IEP team held the meeting without the participation of Doug C. The only Horizons Academy staff member on Spencer's IEP team also did not attend.

With these key participants absent, the IEP team changed Spencer's placement from Horizons Academy to the Workplace Readiness Program at Maui High School. After the meeting, Waiau sent Doug C. the new, completed IEP for his review. The team held a follow-up IEP meeting on December 7 with Doug C. and a staff member from Horizons. At the follow-up meeting, the team reviewed the already completed IEP "line by line." Waiau testified that Doug C. provided no substantive input, while Doug C. explained that he rejected the IEP in its entirety because he was excluded from the development process. No changes were made to the IEP during the December 7 meeting.

The day before the follow-up IEP meeting, Doug C. filed a request for a due process hearing as provided for by the IDEA.  He argued, *inter alia*, that the lack of parental participation in the IEP meeting denied Spencer a FAPE. After a hearing, the administrative hearing officer issued a decision finding that the Department did not deny Spencer a FAPE and dismissed his claims for relief.  The district court affirmed, holding that plaintiffs "failed to show that Defendant did not fulfill its statutory duty to ensure that Doug was afforded an opportunity to participate at the November 9, 2010 IEP meeting."  Doug C. timely appealed.

## II.

We review de novo questions of law, including the question of whether an IEP provides a free appropriate public education (FAPE).  *Shapiro*, 317 F.3d at 1076.  We review the district court's findings of fact for clear error, even when they are based on an administrative record.  *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001). The deference due to the administrative findings under the IDEA is less than the high standard of deference for judicial review of most agency actions.  *Id.*  But we must give "due weight" to administrative findings, particularly when the findings are "thorough and careful."  *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007) (internal quotation marks and citations omitted).

## III.

### A.

In order to "ensure that the rights of children with disabilities and parents of such children are protected,"

20 U.S.C. § 1400(d)(1)(B), *see also* 34 C.F.R. § 300.1(b), the IDEA guarantees a FAPE to children with disabilities, 20 U.S.C. § 1412(a)(1)(A), 34 C.F.R. § 300.101.[4]  When analyzing whether an agency provided a student a FAPE, we conduct a two-part inquiry.  First, we must consider whether "the State complied with the procedures set forth in the Act." *Amanda J.*, 267 F.3d at 890 (quoting *Rowley*, 458 U.S. at 206–07) (internal quotation marks omitted).  Second, we must determine whether the IEP is "reasonably calculated to enable the child to receive educational benefits." *Id.*  A state must meet both requirements to comply with the obligations of the IDEA.  *Rowley*, 458 U.S. at 207.

Harmless procedural errors do not constitute a denial of FAPE.  *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2008).  "'However, procedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of FAPE.'" *Shapiro*, 317 F.3d at 1079 (quoting *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992)).  Where a court identifies a procedural violation

---

[4] Hawaii has fully implemented the purposes, guarantees, and protections of the IDEA into its own regulatory structure. *See* Haw. Code R. §§ 8-60-1 to 8-60-84; *see also* § 8-60-1(b) ("This chapter shall be construed as supplemental to, and in the context of, the Individuals With Disabilities Education Act . . . and other federal laws and regulations relating to the provision of a free appropriate public education to a student with a disability.").  Hawaii's regulations mirror the language in the IDEA regarding the IDEA's purposes, the guarantee of a FAPE, and the requirement of parent participation. *Compare* Haw. Code R. § 8-60-1 (purposes), *with* 34 C.F.R. § 300.1 (same); Haw. Code R. § 8-60-3 (guarantee of FAPE), *with* 34 C.F.R. § 300.101 (same); Haw. Code R. § 8-60-46 (parent participation), *with* 34 C.F.R. § 300.322 (same).

that denied a student a FAPE, the court need not address the second prong. *Id.*

Parental participation in the IEP and educational placement process is critical to the organization of the IDEA. *See* 20 U.S.C. § 1414(d)(1)(B)(i) (requiring the inclusion of parents on the IEP team); 34 C.F.R. § 300.321(a)(1) (same); 20 U.S.C. § 1415(b)(1) (requiring opportunities for parents "to participate in meetings with respect to identification, evaluation and educational placement of the child"). Indeed, the Supreme Court has stressed that the IDEA's structure relies upon parental participation to ensure the substantive success of the IDEA in providing quality education to disabled students:

> [W]e think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process as it did upon the measurement of the resulting IEP against a substantive standard. We think that the congressional emphasis upon full participation of concerned parties throughout the development of the IEP . . . demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.

*Rowley*, 458 U.S. at 205–06 (citation omitted); *see also Schaffer v. Weast*, 546 U.S. 49, 53 (2005) ("The core of the [IDEA] . . . is the cooperative process that it establishes between parents and schools. . . . The central vehicle for this collaboration is the IEP process."); *Honig v. Doe*, 484 U.S. 305, 311 (1988) ("Congress repeatedly emphasized throughout the [IDEA] the importance and *indeed the necessity of parental participation* in both the development of the IEP and any subsequent assessments of its effectiveness.") (emphasis added).

Echoing the Supreme Court, we have held that parental participation safeguards are "[a]mong the most important procedural safeguards" in the IDEA and that "[p]rocedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA." *Amanda J.*, 267 F.3d at 882, 892. We have explained that parental participation is key to the operation of the IDEA for two reasons: "Parents not only represent the best interests of their child in the IEP development process, they also provide information about the child critical to developing a comprehensive IEP and which only they are in a position to know." *Id.* at 882.

In accordance with the foregoing, the regulatory framework of the IDEA places an affirmative duty on agencies to include parents in the IEP process. The public agency "responsible for providing education to children with disabilities," 34 C.F.R. § 300.33, is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate" including providing ample notice and "scheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322(a). Moreover, if a parent cannot

attend, the agency must offer other methods of participation such as video or teleconferencing. 34 C.F.R. §§ 300.322(c), 300.328. Most importantly, a meeting may *only* be conducted without a parent if "the public agency is *unable* to convince the parents that they should attend." § 300.322(d) (emphasis added). And in that circumstance, the agency must keep a detailed record of its attempts to include the parent. *Id.* In *Shapiro*, we clarified the limited circumstances under which a public agency can hold an IEP meeting without parental participation. 317 F.3d at 1078. We held that parental "involvement in the 'creation process' requires the [agency] to include the [parents in an IEP meeting] unless they *affirmatively refused to attend*." *Id.* (emphasis added).

**B.**

Doug C. did not "affirmatively refuse[] to attend the meeting," *id.*, nor could it be said that the Department was "unable to convince" him to attend, 34 C.F.R. § 300.322(d). To the contrary, Doug C. vigorously objected to the Department holding an IEP meeting without him and asked the Department to reschedule the meeting for the following week. In response to the Department's offer to reschedule for either of the following two days, he agreed to try to attend but, understandably, could not firmly commit to a meeting date only one or two days later while he was sick. Despite the foregoing, the Department went forward with the IEP meeting without him, over his repeated objections, and, at that meeting, decided to change Spencer's educational placement for the first time in six years. The Department's actions simply do not accord with the standard we set forth in *Shapiro*.

The fact that it may have been frustrating to schedule meetings with or difficult to work with Doug C. (as the Department repeatedly suggests) does not excuse the Department's failure to include him in Spencer's IEP meeting when he expressed a willingness to participate. We have consistently held that an agency cannot eschew its affirmative duties under the IDEA by blaming the parents. *See Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1055 (9th Cir. 2012) ("[P]articipating educational agencies cannot excuse their failure to satisfy the IDEA's procedural requirements by blaming the parents."); *see also Target Range*, 960 F.2d at 1485 (holding that the school district could not blame parents' choice to leave an IEP meeting for its own failure to create an IEP with the participation of the appropriate parties). An agency cannot blame a parent for its failure to ensure meaningful procedural compliance with the IDEA because the IDEA's protections are designed to benefit the student, not the parent. As we explained in *Amanda J.*, parental participation is key to providing the *student* an adequate education because "[a]n IEP which addresses the unique needs of the child cannot be developed if those people who are most familiar with the child's needs are not involved." 267 F.3d at 892.[5] Because the Department's obligation is owed to the child, any alleged obstinance of Doug C. does not excuse the Department's failure to fulfill its affirmative obligation to include Doug C. in the IEP meeting

---

[5] The Department minimizes the importance of parental participation under the IDEA when it argues that Doug C. would have had little to contribute at the IEP meeting. The Department is in no position to question the value of Doug C.'s input. Congress already answered that question when it prioritized parental participation in the IEP process.

when he expressed a willingness (indeed eagerness) to participate, albeit at a later date.[6]

The Department's central argument is that it could not accommodate Doug C.'s request to reschedule because of the impending annual IEP deadline on November 13. Even assuming that the annual deadline should somehow trump parental participation, the Department's argument fails on the facts of this case. Waiau, the coordinator of the IEP meeting, testified that he refused to reschedule the meeting for the Wednesday or Thursday *before* the deadline because Doug C. could not firmly commit to either of those dates because of his illness, even though Doug C. testified that he said that he likely could attend. Waiau explained that he did not wish to disrupt the other IEP's members' schedules without a firm commitment.

This argument may seem reasonable but quickly unravels because, under the IDEA, the attendance of Doug C., Spencer's parent, must take priority over other members' attendance for the reasons discussed above. Indeed, a parent can consent to the absence of other team members at the meeting. 20 U.S.C. § 1414(d)(1)(C). In *Shapiro*, we clearly held that an agency cannot exclude a parent from an IEP meeting in order to "prioritize[] its representatives' schedules." 317 F.3d at 1078. By refusing to reschedule the meeting for Wednesday or Thursday, Waiau improperly prioritized the schedules of the other members of the team

---

[6] Of course, if the parent refuses to attend or is entirely unresponsive to the agency's requests to meet, the agency has a duty to move forward with the IEP process. *See, e.g., K.D. v. Dep't of Educ.*, 665 F.3d 1110, 1124 (9th Cir. 2011). That is precisely the balance that the IDEA regulations strike, as we recognized in *Shapiro*.

over the attendance of Doug C. Moreover, Waiau also testified that he did not offer Doug C. the option of meeting on the Friday *before* the annual review deadline because other members of the IEP team were not available to meet that day. Once again, the Department improperly prioritized its own representatives' schedules and attendance over the attendance of the parent.

Even if the Department's theory of the case was supported by the facts, the Department's argument that it absolutely could not reschedule the IEP meeting for a date even a few days after the annual deadline in order to include Doug C. is untenable. Waiau's testimony suggests, and the Department's counsel represented at oral argument, that if the annual deadline passed without a new IEP, services would "lapse." The district court took a similar position. We reject this argument because it is premised on the erroneous assumption that the Department is authorized (let alone *required*) to cease providing services to a student if his annual IEP review is overdue. The IDEA mandates annual review of a student's IEP. 20 U.S.C. §1414(d)(4); *see also* 34 C.F.R. § 300.324(b)(1)(i). However, the Department cites no authority, nor could it, for the proposition that it cannot provide any services to a student whose annual review is overdue.

The more difficult question is what a public agency must do when confronted with the difficult situation of being unable to meet two distinct procedural requirements of the IDEA, in this case parental participation and timely annual review of the IEP. In considering this question, we must keep in mind the purposes of the IDEA: to provide disabled students a free appropriate public education and to protect the educational rights of those students. 20 U.S.C. § 1400(d). It

is also useful to consider our standard for determining when a procedural error is actionable under the IDEA. We have repeatedly held that "procedural inadequacies that result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." *Shapiro*, 317 F.3d at 1079; *see also Amanda J.*, 267 F.3d at 892. When confronted with the situation of complying with one procedural requirement of the IDEA or another, we hold that the agency must make a reasonable determination of which course of action promotes the purposes of the IDEA and is least likely to result in the denial of a FAPE. In reviewing an agency's action in such a scenario, we will allow the agency reasonable latitude in making that determination.

In this case, the Department was allegedly confronted with two options: including Doug C. in the meeting and missing the IEP annual deadline by several days or proceeding with the IEP meeting without Doug C. but meeting the annual deadline. As discussed *supra*, the Supreme Court and this court have both repeatedly stressed the vital importance of parental participation in the IEP creation process. We have further held that delays in meeting IEP deadlines do not deny a student a FAPE where they do not deprive a student of any educational benefit. *See A.M. v. Monrovia*, 627 F.3d 773, 779 (9th Cir. 2010) ("Whether or not Defendant exceeded the thirty-day limit, A.M. suffered no deprivation of educational benefit and therefore has no claim."). Under the circumstances of this case, the Department's decision to prioritize strict deadline compliance over parental participation was clearly not reasonable.

There may, of course, be circumstances in which accommodating a parent's schedule would do more harm to

the student's interest than proceeding without the parent's presence at the IEP. For example, in *A.M.*, it was appropriate for the school to convene an IEP without the parents' participation because the student was new to the school, and therefore did not have any IEP in place, and the student's parents were unwilling to reschedule for an entire month after having canceled a scheduled IEP review that was itself already almost one month overdue. 627 F.3d at 780. We trust, however, that such circumstances will be rare given the central role parents have in helping to develop IEPs.

Finally, the Department argues that there was no violation here because the Department held a follow-up IEP meeting with Doug C. present on December 7. We rejected a similar argument in *Shapiro*. We held that where an agency violates the IDEA by producing a new IEP without the participation of the child's parents, "[a]fter-the-fact parental involvement is not enough" because the IDEA contemplates parental involvement in the "creation process." *Shapiro*, 317 F.3d at 1078. It is uncontested that, at the time of the December 7 meeting, the new IEP was already completed and adopted. Therefore, the after-the-fact meeting is not enough to remedy the Department's decision to hold the initial IEP meeting, in which they created the IEP and changed Spencer's placement, without Doug C.

## C.

We recognize that not every procedural violation results in the denial of a FAPE, but procedural errors "that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process" do. *Shapiro*, 317 F.3d at 1079. The failure to include Doug C. in the IEP meeting clearly infringed on his

ability to participate in the IEP formulation process.  That reason alone is cause to conclude that Spencer was denied a FAPE.

The procedural violation here also denied Spencer a FAPE for the separate reason that it resulted in the denial of an educational opportunity.  A procedural error results in the denial of an educational opportunity where, absent the error, there is a "strong likelihood" that alternative educational possibilities for the student "would have been better considered." *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 657 (9th Cir. 2003) (Gould, J. concurring in part and concurring in the judgment).  Thus, an IEP team's failure to properly consider an alternative educational plan can result in a lost educational opportunity even if the student cannot definitively demonstrate that his placement would have been different but for the procedural error. *See id.*  Here, there is a strong likelihood that the benefits of placement at Horizons Academy, Doug C.'s preferred placement for his son, would have been more thoroughly considered if Doug C. had been present at the meeting.  It is particularly likely that the merits of continuing Spencer's placement at Horizons Academy were not adequately considered in light of the fact that the IEP team member from the Academy was also absent.

Therefore, both because (1) Doug C.'s opportunity to participate was seriously infringed and (2) the procedural violation denied Spencer an educational opportunity by causing the merits of his placement at Horizon Academy to receive insufficient consideration, the Department denied Spencer a FAPE.

## IV.

For the foregoing reasons, we reverse the district court's judgment and remand.  On remand, the district court must determine whether Doug C. is entitled to reimbursement for the costs of maintaining Spencer at Horizons Academy during the administrative and judicial review proceedings.  Parents who place their children in private schools pending review proceedings under the IDEA are entitled to reimbursement if (1) the public placement violated the IDEA and (2) "the private school placement was proper under the Act." *Florence Cnty. Sch. Dist. Four*, 510 U.S. at 15.  Spencer's placement at the Workplace Readiness Program at Maui High School violated the IDEA because the placement was a result of the November 9 IEP meeting.  Neither the district court nor the administrative hearing officer considered whether Horizons was a proper placement under the Act.  Therefore, upon remand, the district court is directed to consider whether Spencer's placement at Horizons Academy was proper under the Act and, if so, order reimbursement for Spencer's private placement during the course of the administrative and judicial proceedings.  *Id.*; 20 U.S.C. § 1415(i)(2)(C)(iii) (giving a district court the power to "grant such relief as [it] determines is appropriate").

We note that a parent's decision to place his child in a private school is "proper" so long as the school the parent selects "provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (internal quotation marks and citation omitted).  This standard is met even if the private school provides "some, but not all"

of the students educational needs; the placement need not "maximize the[] child's potential." *Id.* (internal quotation marks, citation, and italics omitted). Where, as here, the private school selected by the parent is the same school that the child has previously attended for several years under IEPs that have been approved by all parties, we think it highly unlikely that the placement does not represent a "proper" placement.[7] Nonetheless, we remand to permit the district court to consider the question. The district court may remand this issue to the state hearing officer to decide in the first instance.

**REVERSED and REMANDED.**

---

[7] Indeed, under the IDEA's "stay put" provision, a child is typically entitled to remain in his previous educational setting throughout the course of any administrative and judicial proceedings. *See* 20 U.S.C. § 1415(j). Here, however, Doug C. has not appealed the district court's denial of his motion for a stay put order, so we do not address whether he is entitled to reimbursement on that basis.