NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| N. G., a conserved adult, by and through her conservators, R.G. and G.G.; et al., <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> PLACENTIA YORBA LINDA UNIFIED SCHOOL DISTRICT, <br><br> Defendant-Appellee. | No. 18-56407 <br><br> D.C. No. 8:17-cv-02121-AG-DFM <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted March 6, 2020
Pasadena, California

Before: HURWITZ and FRIEDLAND, Circuit Judges, and KORMAN,[**] District Judge.

N.G. is a young woman on the autistic spectrum who qualified for educational services pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

U.S.C. § 1400 *et seq.*, because of her significant intellectual deficits. Until 2016, N.G.'s school district ("the District") funded her attendance at a certified non-public school. In September 2015, N.G.'s parents asked the District to offer N.G. a placement in a full-time residential treatment program because the behavioral progress she had made at school was not reflected at home, where her self-injurious and aggressive behavior continued and negatively affected her twin sister, who also has significant disabilities. This request was denied. On November 25, 2015, N.G.'s parents filed a request for a due process hearing. They alleged that the failure to offer N.G. a residential placement denied her a free appropriate public education ("FAPE") for the 2014–2015 and 2015–2016 school years. *See* 20 U.S.C. § 1412(a)(1). In January 2016, the parties entered into a settlement agreement, pursuant to which the District agreed to help fund N.G.'s unilateral placement at Heartspring, a private residential treatment center in Kansas, through June 2016. The agreement also provided that the parties would proceed with an annual meeting to develop an individualized education program ("IEP") for N.G. for the 2016–2017 school year "to offer [her] an IEP for the period following expiration" of their settlement agreement. During that meeting, the District again did not offer N.G. a residential placement, and shortly thereafter N.G.'s parents enrolled her at Heartspring. The agreement was ultimately extended to provide a total of $145,000 in funding through December 31, 2016.

In April 2017, at which point N.G. remained enrolled at Heartspring, the District held the next annual IEP meeting, for the 2017–2018 school year, and again declined to offer a residential placement. N.G. then filed another request for a due process hearing principally alleging that the District had failed to offer a FAPE from the expiration of the settlement period at the end of 2016 through the 2017–2018 school year.

The administrative law judge ("ALJ") found that N.G. had failed to meet the burden of establishing that, during any time period at issue in this case, she required a residential placement for educational purposes, or that placement at a non-public school would not provide her with a FAPE. She found that "the weight of the evidence . . . demonstrated that Student had been making significant educational and behavioral progress" prior to her parent's unilateral placement of N.G. at Heartspring. Specifically, the ALJ found that N.G.'s "self-injurious and physically aggressive behaviors had significantly decreased by the time of [the] IEP team meetings [regarding the 2016–2017 school year] to the extent that some of the behaviors had not occurred at all in the two months prior to the meetings." By contrast, after N.G.'s parents rejected the placement that the District had offered, there was strong evidence that N.G.'s "maladaptive behaviors did not abate at all subsequent to her enrollment at Heartspring. Rather, many of those behaviors increased during the 15 months she was there prior to the hearing [before the ALJ]."

18-56407

After the ALJ ruled in favor of the District on all issues, with one exception, N.G. commenced this action. The district court affirmed the ALJ's decision. We have jurisdiction of N.G.'s appeal under 28 U.S.C. § 1291, and we affirm.

In IDEA cases, an ALJ's findings are entitled to "substantial weight" if the "decision evinces [the ALJ's] careful, impartial consideration of all the evidence and demonstrates [the ALJ's] sensitivity to the complexity of the issues presented." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1476 (9th Cir. 1993); *accord Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1008-09 (9th Cir. 2009). After reviewing the lengthy record compiled by the ALJ and her exhaustive 48-page opinion, the district judge held that her findings were entitled to substantial weight, and that he would likely reach the same conclusions even under a lower standard of deference.

We affirm the factual determination that there was no relevant time when a residential placement of N.G. was "necessary to provide special education and related services." *See R.J.*, 588 F.3d at 1009 (internal quotation marks omitted); *see also id.* ("Whether a residential placement is necessary . . . is ultimately a question of fact, which we review for clear error."). The April 2016 IEP was "reasonably calculated to enable [N.G.] to make progress appropriate in light of [her] circumstances" and thus offered her a FAPE for the post-settlement period. *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999

18-56407

(2017).[1]

N.G.'s remaining claims do not require extended discussion. We reject her argument that the ALJ erred in ordering the District to reimburse N.G. only for the educational portion of the expenses she continued to incur at Heartspring from April to June 2017, when the non-residential placement the District offered was not available. The ALJ held that N.G. was not entitled to reimbursement for residential expenses because she had failed to "prove that she required placement at a residential treatment center to receive a FAPE at any time pertinent to this case." The district court's decision not to disturb that remedy was a reasonable exercise of its broad discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

N.G. also claims that the District denied her a FAPE by failing to offer her an adequate transition plan from Heartspring to its offered non-residential placement. California Education Code § 56345(b)(4), upon which the District relies in response to this contention, only requires a plan for "transition into the regular class program

---

[1] We need not determine whether the District was obligated to convene a new IEP meeting between January and April 2017 because, in light of our determination that there was no reversible error as to whether N.G. required a residential placement at any relevant time, any error in fulfilling such an obligation would have been harmless procedural error. *See Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013). We also need not determine whether the ALJ and district court erred in concluding that N.G.'s parents had, through their settlement agreement, released any claims related to the District's placement offer for the 2016–2017 school year because we affirm on the merits regarding the adequacy of that offer.

if the pupil is to be transferred from a special class or nonpublic, nonsectarian school into a regular class in a public school." Such a transfer was not contemplated here. Moreover, as the ALJ found, the District did include a transition plan in the April 2017 IEP and while N.G. argued that the plan was inadequate, "she offered no evidence of exactly what more [the] District should have included."

Finally, contrary to N.G.'s argument, the District made a definite, unambiguous placement offer in its June 2017 letter, even if it also addressed other aspects of the District's then-ongoing efforts to accommodate N.G. *See* 20 U.S.C. § 1415(c)(1).

**AFFIRMED**.